UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO.

OLGA LITVINENKO, an individual,

      Plaintiff,

vs.

PALM BEACH POLO, INC.,
a Florida Corporation,

      Defendant.

_____/

## **COMPLAINT**

1.     Plaintiff, OLGA LITVINENKO (hereinafter referred to as "Plaintiff" and "LITVINENKO"), was an employee of Defendant, PALM BEACH POLO, INC., a Florida Corporation (hereinafter "Defendant" or "PALM BEACH POLO"), and brings this action against Defendant for alleged sex/gender discrimination and retaliation in violation of Title VII of the Civil Rights Act, 42 U.S.C. §2000 *et seq.,* and the Florida Civil Rights Act (FCRA), F.S. §760.01 *et seq.*

2.     LITVINENKO is an individual residing in Greenwich, Connecticut who traveled to Palm Beach County, Florida and applied for employment with PALM BEACH POLO in Palm Beach County, within the jurisdiction of this Court.

3.     PALM BEACH POLO, INC. is a Florida Corporation that owns, manages, and/or operates a residential country club and equestrian business in Wellington, Florida, with Defendant's corporate office based at 11199 Polo Club Road, Wellington, Florida 33414 in Palm Beach County within the jurisdiction of this Court.

1

4.      Jurisdiction is conferred on this Court by 28 U.S.C. §1337, §1367 and 42 U.S.C. §2000.

5.      Venue is proper in this Court pursuant to 28 U.S.C. §1391 because a substantial part of the events giving rise to this action occurred in Palm Beach County, within the jurisdiction of the United States District Court for the Southern District of Florida.

6.      LITVINENKO is a Thirty-One (31) year old Female individual.

7.      At all times material to this action, LITVINENKO was an individual protected by the provisions of Title VII, 42 U.S.C. §2000e, and the FCRA, F.S. §760.01 et seq.

8.      At all times relevant to this action, PALM BEACH POLO had fifteen (15) or more employees for each working day in each of twenty (20) or more calendar weeks in the current or preceding calendar year within the meaning of Title VII, 42 U.S.C. §2000e(b), and the FCRA, F.S. §760.02(7).

9.      At all times material to this action, PALM BEACH POLO was an employer within the meaning of Title VII, 42 U.S.C. §2000e(b), and the FCRA, F.S. §760.02(7).

10.     In 2019, LITVINENKO met PALM BEACH POLO's President, Glenn Straub—a Male individual who then was approximately Seventy-Two (72) years of age—and Straub gave LITVINENKO his telephone number as part of telling Plaintiff to "stay in touch" with him while expressing Straub's interest in exploring mutual business opportunities, including the possibility of LITVINENKO working for PALM BEACH POLO in the near future.

11.     In January 2020, LIVITNENKO flew to South Florida and stayed at the Royal Blues Hotel in Deerfield Beach, Florida, during which time Plaintiff met with Straub multiple times in Palm Beach, Florida about, *inter alia*, employment opportunities for LITVINENKO to become an employee of PALM BEACH POLO.  In this regard, in January 2020 Straub encouraged

LITVINENKO to visit Florida again soon so that he could show PALM BEACH POLO's work to Plaintiff and introduce Plaintiff to some of Straub's friends and associates.

12.     In early February 2020, LITVINENKO returned to South Florida and stayed at one of PALM BEACH POLO's employee apartments in Wellington, Florida so that Straub could show Plaintiff PALM BEACH POLO's properties and talk more with Plaintiff about her coming to work as an employee for PALM BEACH POLO.

13.     Notably, in February 2020 while LITVINENKO was in Wellington, Florida under the belief Plaintiff was being considered by PALM BEACH POLO for a full-time job as an executive with Defendant, Straub expressed a desire for physical intimacy with LITVINENKO, with Straub explaining to Plaintiff that sexual relations would constitute part of any arrangement for LITVINENKO to work for PALM BEACH POLO.

14.     Moreover, while Straub further told LITVINENKO in February 2020 that he did not know how Plaintiff would prove her "loyalty" otherwise, from the outset, LITVINENKO made it clear to Straub that a sexual or romantic relationship with Straub did not interest Plaintiff at all and that, to the contrary, any working relationship would be purely professional in nature.

15.     On or around June 11, 2020—after the outbreak of the COVID-19 pandemic served to decelerate discussions about LITVINENKO coming to work as a full-time employee for PALM BEACH POLO—Straub and Plaintiff touched base over the telephone while Straub was believed to be in Wellington, Florida and LITVINENKO was in Greenwich, Connecticut, and it was agreed that LITVINENKO would fly from Connecticut to South Florida in order to further discuss Plaintiff working for PALM BEACH POLO in a full-time position that would encompass LITVINENKO serving as a "Communications Director" or "Director of Special Projects" for Defendant based upon an annual salary of between approximately $200,000 to $300,000 per year.

16.     On or around June 14, 2020, LITVINENKO again spoke with Straub over the telephone while Straub was believed to be in Wellington, Florida and LITVINENKO was in Greenwich, Connecticut.  During this conversation, Straub told LITVINENKO that he understood and respected the discomfort Plaintiff had expressed a few months earlier when Straub previously conditioned LITVINENKO working with PALM BEACH POLO based upon LITVINENKO agreeing to be sexually intimate with Straub.  In this regard, Straub stated on June 14, 2020 that if Plaintiff were to really work for PALM BEACH POLO, he and LITVINENKO would spend a great deal of time together, like "a companionship," while Straub promised that Plaintiff would be paid for her time and expenses for her business trip to South Florida.

17.     On June 15, 2020, LITVINENKO traveled again to Wellington, Florida to further discuss full-time employment with PALM BEACH POLO, but upon Plaintiff's arrival in Wellington, it became clear that Straub still had sexual intentions in mind toward LITVINENKO as a condition of LITVINENKO becoming employed by PALM BEACH POLO.

18.     On June 15, 2020, Straub installed LITVINENKO in an apartment at PALM BEACH POLO's country club in Wellington, Florida.

19.     After an early dinner on June 15, 2020 between LITVINENKO and Straub at a nearby restaurant in Wellington, Florida, during which Straub discussed several work projects, Straub brought LITVINENKO back to the PALM BEACH POLO apartment in Wellington, purportedly to make sure Plaintiff was settled OK and so that Straub could quickly use the bathroom before leaving.  However, Straub emerged from the bathroom on June 15, 2020 with his jeans unbuttoned and his belt loose, clanking noisily.  Straub then proceeded to enter the apartment's bedroom, where he remained until he called LITVINENKO into the bedroom.

20.     Once LITVINENKO entered the bedroom of PALM BEACH POLO's Wellington apartment on June 15, 2020, Plaintiff observed Straub unfolding the blanket on the bed and tossing it to the side, while Straub sat on the bed and told LITVINENKO to get on the bed next to him. However, LITVINENKO responded to Straub that Plaintiff was not comfortable but that the two could talk in the kitchen or living area of the apartment.

21.     Next on June 15, 2020, Straub said to LITVINENKO: "What do you mean?  Don't you understand?"  Straub then told LITVINENKO on June 15th that sexual intimacy with him would be "part of the deal" in order for LITVINENKO to work for PALM BEACH POLO, which constituted an unambiguous confirmation that PALM BEACH POLO's offer of employment to LITVINENKO was subject to an unlawful sexual *quid pro quo* condition that LITVINENKO agree to engage in sexual relations with Straub in order to work for Defendant.

22.     While LITVINENKO was distraught, terrified, and alone on June 15, 2020 in PALM BEACH POLO's apartment bedroom with Straub's sexually-inflamed state, LITVINENKO stammered but made clear to Straub that Plaintiff would not have sex with Straub and that LITVINENKO had only traveled to Wellington, Florida to discuss Plaintiff working for Straub and PALM BEACH POLO.

23.     LITVINENKO explicitly told Straub on June 15, 2020 while inside PALM BEACH POLO's Wellington apartment that Plaintiff had more to offer PALM BEACH POLO than just having sex with Straub.

24.     Despite LITVINENKO being frustrated and bewildered on June 15, 2020 by Straub's sexual demands, particularly because Plaintiff had already previously addressed this topic when LITVINENKO previously rejected Straub's unwanted sexual advances in February 2020, LITVINENKO reminded Straub on June 15th that Plaintiff had a reputation as a businesswoman

to honor and uphold, one that people trust, and that doing as Straub repeatedly insisted would ruin Plaintiff's professional reputation.  In response, Straub said to LITVINENKO: "Wow," and Straub further told LITVINENKO that he "didn't have time to waste," followed by Straub elaborating: "This is what I do.  I like beautiful women.  I'm not like Jeffrey Epstein, who has thirteen (13) year-olds.  This is what I enjoy."

25.     Next on June 15, 2020, LITVINENKO asked Straub what Plaintiff should do, because LITVINENKO had booked a roundtrip ticket under the belief that she was in Wellington, Florida for business reasons, and LITVINENKO further stated that Plaintiff would appreciate it if Straub took care of reimbursing her travel expenses and paying for LITVINENKO's time consistent with Straub's commitment before Plaintiff traveled from Connecticut to Wellington.

26.     In response, Straub told LITVINENKO on June 15, 2020 that he didn't wish to pay LITVINENKO for her time—despite Straub's promise to do so—and that Straub would "think about" reimbursing LITVINENKO for her travel expenses.

27.     On June 16, 2020, Straub boasted to LITVINENKO that Straub would be interviewing other candidates to work with him and PALM BEACH POLO in the role which LITVINENKO spent several months discussing with Straub, including one woman who had been on CNN and purportedly had "good experience" according to Straub.  Similarly, Straub followed these comments up by expressly asking LITVINENKO whether Plaintiff had "changed [her] mind" on anything they had discussed the night before while inside PALM BEACH POLO's Wellington apartment, which was a direct reference to Straub's demand for sexual relations from LITVINENKO in exchange for employment with PALM BEACH POLO.

28.     On June 16, 2020, LITVINENKO again rejected Straub's unlawful attempts to pressure LITVINENKO into engaging in sexual relations with Straub in order to finalize securing a full-time job with PALM BEACH POLO.

29.     After LITVINENKO traveled from Florida back to Connecticut in June 2020, Straub attempted to secure a waiver and release of all of Plaintiff's rights through a company check PALM BEACH POLO issued to "Olga Litvinenko" on June 18, 2020 from Defendant's Bank of America account, Check No. 109279, in the amount of $1,000.00—under the guise of providing partial reimbursement for LITVINENKO's travel expenses—but PALM BEACH POLO placed on the back of the check the following:  "negotiation of this check shall act as a full release of all claims and liabilities."  See Exhibit A.

30.     LITVINENKO did not cash or deposit PALM BEACH POLO's June 18, 2020 check.

31.     In approximately late June 2020, LITVINENKO contacted Straub to follow up about: (a) the expense reimbursements and payment from PALM BEACH POLO; and (b) whether PALM BEACH POLO had legitimate interest in hiring LITVINENKO based upon the bona fides of Plaintiff's experience and qualifications.

32.     However, despite LITVINENKO at all times material to this Complaint being qualified to work for PALM BEACH POLO as a "Communications Director" or "Director of Special Projects," Defendant failed and/or refuse to hire LITVINENKO as an employee in June 2020 because of LITVINENKO's sex/gender, Female, and LITVINENO's rejection of Straub's demand for sexual relations from Plaintiff as a condition of her becoming an employee of PALM BEACH POLO.

33.    All conditions precedent to the institution of the claims in this Complaint have either occurred or been waived.

### EXHAUSTION OF ADMINISTRATIVE REMEDIES

34.    On September 17, 2020, LITVINENKO dual filed a Charge of Discrimination against PALM BEACH POLO with the United States Equal Employment Opportunity Commission (EEOC) and the Florida Commission on Human Relations (FCHR), Charge No. 510-2020-05940, sex/gender discrimination and retaliation by PALM BEACH POLO against LITVINENKO in violation of Title VII of the Civil Rights Act, 42 U.S.C. §2000 *et seq*. and the Florida Civil Rights Act (FCRA), F.S. §760.01 *et seq*.  A copy of LITVINENKO's EEOC Charge, Charge No. 510-2020-05940, is attached hereto as Exhibit B.

35.    On or around February 10, 2021, the EEOC issued a Notice of Right to Sue to LITVINENKO in connection with EEOC Charge No. 510-2020-05940, see Exhibit C, which Notice was received by the undersigned counsel for LITVINENKO on February 17, 2021.

36.    LITVINENKO's Complaint with this Court is being filed on May 10, 2021, within Ninety (90) days of LITVINENKO's receipt of the Notice of Right to Sue in connection with Charge No. 510-2020-05940, and Plaintiff exhausted all administrative remedies on the Title VII claims pled in this Complaint.

37.    As of May 10, 2021, more than One Hundred and Eighty (180) days have passed since the filing of LITVINENKO's Charge of Discrimination and the FCHR did not issue any determination concerning LITVINENKO's Charge.  As a result, pursuant to F.S. §760.11(18), which provides that in the event that the FCHR fails to conciliate or determine whether there is reasonable cause on any complaint under that section within 180 days of the filing of the complaint, an aggrieved person may file a civil action "as if the commission determined that there was

reasonable cause," LITVINENKO has exhausted all administrative remedies under Florida as well as Federal law.

38.     All conditions precedent to the institution of this action have either occurred or been waived.

**COUNT I**
**VIOLATION OF TITLE VII OF THE CIVIL RIGHTS ACT OF 1964,**
**42 U.S.C. §2000e ET SEQ. - UNLAWFUL SEX/GENDER DISCRIMINATION**

Plaintiff, OLGA LITVINENKO, reasserts and reaffirms the allegations of Paragraphs 1 through 38 as if fully set forth herein and further states that this is an action against PALM BEACH POLO, INC. for Sex/Gender discrimination in violation of Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. §2000e *et seq.*

39.     Title VII of the Civil Rights Act of 1964, as amended, provides that it is unlawful for an employer to "fail or refuse to hire or to discharge any individual, or otherwise to discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's … sex ..." 42 U.S.C. §2000e-2(a)(1).

40.     On multiple occasions between February 2020 and June 2020, Straub demanded that LITVINENKO engage in sexual relations with Straub as a condition of LITVINENKO being hired as an employee of PALM BEACH POLO.

41.     On multiple occasions between February 2020 and June 2020, LITVINENKO rejected Straub's repeated demands for sexual relations from her as a condition of Plaintiff being hired as an employee of PALM BEACH POLO.

42.     Straub's repeated sexual solicitation of LITVINENKO between February 2020 and June 2020 and Straub's attempts between February 2020 and June 2020 to require that LITVIVENKO engage in sexual relations with Straub as a *quid pro quo* for Plaintiff being hired

as an employee by PALM BEACH POLO constitutes unlawful sexual harassment and sex/gender discrimination with respect to the terms or conditions of employment in violation of Title VII, 42 U.S.C. §2000e-2(a)(1) & (2).

43.     Between February 2020 and June 2020, LITVINENKO was subjected to unwelcome sexual harassment, sexually hostile behavior, and sex/gender discrimination by Straub, President of PALM BEACH POLO, all because of LITVINENKO's sex/gender, Female, in violation of 42 U.S.C. §2000e-2(a)(1) & (2).

44.     The sexual harassment and sex/gender discrimination against LITVINENKO between February 2020 and June 2020 was sufficiently severe and pervasive as to alter the terms, conditions and privileges of the employment LITVINENKO sought with PALM BEACH POLO.

45.     PALM BEACH POLO's management knew about the unlawful sexual harassment and sex/gender discrimination against LITVINENKO between February 2020 and June 2020— including but not limited to because of LITVINENKO's express objections to and refusal of Straub's repeated demands for sexual relations from Plaintiff as a condition of LITVINENKO being hired as a full-time employee of Defendant—but PALM BEACH POLO failed to take any corrective action to address the unlawful conduct against LITVINENKO, in violation of 42 U.S.C. §2000e-2(a)(1) & (2).

46.     PALM BEACH POLO'S discrimination and disparate treatment of LITVINENKO because of her sex/gender, Female, was so severe and pervasive that it altered the terms, conditions, and privileges of the employment LITVINENKO sough with Defendant, in violation of 42 U.S.C. §2000e-2(a)(1) & (2).

47.     A motivating factor behind PALM BEACH POLO's failure or refusal to hire LITVINENKO in June 2020 was LITVINENKO's sex/gender, Female, in violation of 42 U.S.C. §2000e-2(a)(1).

48.     PALM BEACH POLO's violations of LITVINENKO's rights under Title VII of the Civil Rights Act of 1964, as amended, were intentional and were done with malice and reckless disregard for LITVINENKO's rights as guaranteed under the laws of the United States.  As such, LITVINENKO is entitled to punitive damages against PALM BEACH POLO pursuant to 42 U.S.C. §1981a(a)(1).

49.     LITVINENKO has suffered lost earnings and employment benefits, emotional distress, loss of self-esteem and other injuries as a direct result of PALM BEACH POLO's violations of 42 U.S.C. §2000e-2(a)(1) & (2).

50.     Pursuant to 42 U.S.C. §2000e-5(k), LITVINENKO is entitled to recover her reasonable attorneys' fees and costs from PALM BEACH POLO.

WHEREFORE, Plaintiff, OLGA LITVINENKO, demands judgment against Defendant, PALM BEACH POLO, INC., for back pay, employment benefits, other compensation including bonuses, compensatory damages, equitable relief including but not limited to front pay, punitive damages, injunctive relief, interest, attorney's fees, costs, expert fees and such other and further relief as this Honorable Court deems proper.

**COUNT II**
**RETALIATION IN VIOLATION OF TITLE VII OF THE CIVIL RIGHTS ACT OF 1964, 42 U.S.C. §2000e _ET SEQ._**

Plaintiff, OLGA LITVINENKO, reasserts and reaffirms the allegations of Paragraphs 1 through 38 as if fully set forth herein and further states that this is an action against PALM BEACH

POLO, INC. for Retaliation in violation of Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. §2000e-3.

51.     Pursuant to 42 U.S.C. §2000e-3(a), "[i]t shall be an unlawful employment practice for an employer to discriminate against any of his employees …. because [the employee] has opposed any practice made an unlawful employment practice by this subchapter, or because he has made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing under this subchapter."

52.     LITVINENKO reasonably and in good faith believed between February 2020 and June 2020 that she was being subjected to unlawful sexual harassment by Straub and discrimination by PALM BEACH POLO based upon Plaintiff's sex/gender, Female.

53.     When LITVINENKO objected to and rejected the (a) sexual harassment by Straub between February 2020 and June 2020; and (b) Straub's unwanted sexual advances and demands for sexual relations from LITVINENKO between February 2020 and June 2020 as an express condition by Straub, President of PALM BEACH POLO, for LITVINENKO to be hired as a full-time employee of PALM BEACH POLO—which conduct by Straub LITVINENKO reasonably and in good faith believed was illegal—LITVINENKO engaged in protected activity within the meaning of Title VII, 42 U.S.C. §2000e-3(a).

54.     PALM BEACH POLO intentionally retaliated against LITVINENKO in June 2020 and refused or failed to hire LITVINENKO as a full-time employee following LITVINENKO'S objections to and rejections of Straub's unlawful demands for sexual relations from LITVINENKO as a condition of Plaintiff being hired by PALM BEACH POLO, in violation of 42 U.S.C. §2000e-3(a).

55.     The fact that LITVINENKO engaged in activity protected by Title VII between February 2020 and June 200—by, *inter alia,* (a) objecting between February 2020 and June 2020 to the sexual harassment and sex/gender discrimination she was subjected to by Straub; (b) repeatedly rejecting between February 2020 and June 2020 Straub's multiple demands for sexual relations from LITVINENKO as a condition of Plaintiff being hired as an employee by PALM BEACH POLO—was a motivating factor behind PALM BEACH POLO's failure or refusal to hire LITVINENKO as an employee in June 2020, in violation of 42 U.S.C. §2000e-3(a).

56.     PALM BEACH POLO'S unlawful retaliation against LITVINENKO was intentional and done with malice and reckless disregard for LITVINENKO'S rights as guaranteed under Title VII.  As such, LITVINENKO is entitled to punitive damages against PALM BEACH POLO pursuant to 42 U.S.C. §1981a(a)(1).

57.     As a direct and proximate result of PALM BEACH POLO'S unlawful retaliation against LITVINENKO, Plaintiff has suffered damages and has been deprived of job-related economic benefits, all in amounts to be established at trial, including suffering a loss of earnings, emotional distress, loss of self-esteem and other injuries as a direct result of PALM BEACH POLO'S violations of 42 U.S.C. §2000e-3(a).

58.     Pursuant to 42 U.S.C. §2000e-5(k) and §1988(b), LITVINENKO is entitled to recover her reasonable attorneys' fees and costs from PALM BEACH POLO.

WHEREFORE, Plaintiff, OLGA LITVINENKO, demands judgment against Defendant, PALM BEACH POLO, INC., for back pay, employment benefits, other compensation including bonuses, compensatory damages, equitable relief including but not limited to front pay, punitive damages, injunctive relief, interest, attorney's fees, costs, expert fees and such other and further relief as this Honorable Court deems proper.

13

<u>**COUNT III**</u>
**<u>SEX/GENDER DISCRIMINATION AND SEXUAL HARASSMENT IN VIOLATION OF
THE FLORIDA CIVIL RIGHTS ACT</u>**

Plaintiff, OLGA LITVINENKO, reasserts and reaffirms the allegations set forth in paragraphs 1 through 38 above and further states that this is an action against PALM BEACH POLO, INC. for sex/gender discrimination in violation of Florida Statutes §760.10(1).

59.     The Florida Civil Rights Act provides that it is an unlawful employment practice for an employer "[t]o discharge or to fail or refuse to hire any individual, or otherwise to discriminate against any individual with respect to compensation, terms, conditions, or privileges of employment, because of such individual's . . . sex . . ." F.S. §760.10(1)(a).

60.     At all times material to this action, PALM BEACH POLO was an employer within the meaning of F.S. §760.02(7).

61.     At all times material to this action, LITVINENKO has been an aggrieved person within the meaning of F.S. §760.02(10).

62.     On multiple occasions between February 2020 and June 2020, Straub demanded that LITVINENKO engage in sexual relations with Straub as a condition of LITVINENKO being hired as an employee of PALM BEACH POLO.

63.     On multiple occasions between February 2020 and June 2020, LITVINENKO rejected Straub's repeated demands for sexual relations from her as a condition of  Plaintiff being hired as an employee of PALM BEACH POLO.

64.     Straub's repeated sexual solicitation of LITVINENKO between February 2020 and June 2020 and Straub's attempts between February 2020 and June 2020 to require that LITVIVENKO engage in sexual relations with Straub as a *quid pro quo* for Plaintiff being hired as an employee by PALM BEACH POLO constitutes unlawful sexual harassment and sex/gender

discrimination with respect to the terms or conditions of employment in violation of the FCRA, F.S. §760.10(1)(a) & (b).

65.     Between February 2020 and June 2020, LITVINENKO was subjected to unwelcome sexual harassment, sexually hostile behavior, and sex/gender discrimination by Straub, President of PALM BEACH POLO, all because of LITVINENKO's sex/gender, Female, in violation of the FCRA, F.S. §760.10(1)(a) & (b).

66.     The sexual harassment and sex/gender discrimination against LITVINENKO between February 2020 and June 2020 was sufficiently severe and pervasive as to alter the terms, conditions and privileges of the employment LITVINENKO sought with PALM BEACH POLO.

67.     PALM BEACH POLO's management knew about the unlawful sexual harassment and sex/gender discrimination against LITVINENKO between February 2020 and June 2020— including but not limited to because of LITVINENKO's express objections to and refusal of Straub's repeated demands for sexual relations from Plaintiff as a condition of LITVINENKO being hired as a full-time employee of Defendant—but PALM BEACH POLO failed to take any corrective action to address the unlawful conduct against LITVINENKO, in violation of the FCRA, F.S. §760.10(1)(a) & (b).

68.     PALM BEACH POLO'S discrimination and disparate treatment of LITVINENKO because of her sex/gender, Female, was so severe and pervasive that it altered the terms, conditions, and privileges of the employment LITVINENKO sough with Defendant, in violation of the FCRA, F.S. §760.10(1)(a) & (b).

69.     A motivating factor behind PALM BEACH POLO's failure or refusal to hire LITVINENKO in June 2020 was LITVINENKO's sex/gender, Female, in violation of the FCRA, F.S. §760.10(1)(a) & (b).

70.     PALM BEACH POLO's violations of §760.10 were intentional and were done with malice and reckless disregard for LITVINENKO's rights as guaranteed under the laws of the State of Florida, such that LITVINENKO is entitled to punitive damages against PALM BEACH POLO pursuant to F.S. §760.11(5).

71.     LITVINENKO has suffered lost earnings, emotional distress, loss of self-esteem, and other damages as a direct result of PHOENIX's violations of F.S. §760.10(1).

72.     Pursuant to F.S. §760.11(5), LITVINENKO is entitled to recover her reasonable attorneys' fees and costs from PALM BEACH POLO.

WHEREFORE, Plaintiff, OLGA LITVINENKO, demands judgment against Defendant, PALM BEACH POLO, INC., for back pay, employment benefits, other compensation including bonuses, compensatory damages, including, but not limited to, damages for mental anguish, loss of dignity, and any other intangible injuries, equitable relief, interest, costs, attorney's fees, expert fees and such other and further relief as this Honorable Court deems proper.

## COUNT IV
## RETALIATION IN VIOLATION OF THE FLORIDA CIVIL RIGHTS ACT, F.S. §760.10

Plaintiff, OLGA LITVINENKO, reasserts and reaffirms the allegations set forth in paragraphs 1 through 38 above and further states that this is an action against PALM BEACH POLO, INC., for Retaliation in violation of the Florida Civil Rights Act, F.S. §760.10.

73.     Under the Florida Civil Rights Act, F.S. §760.10(7), it is "an unlawful employment practice for an employer … to discriminate against any person because that person has opposed any practice which is an unlawful employment practice under this section, or because that person has made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing under this section."

74.     LITVINENKO reasonably and in good faith believed between February 2020 and June 2020 that she was being subjected to unlawful sexual harassment by Straub and discrimination by PALM BEACH POLO based upon Plaintiff's sex/gender, Female.

75.     When LITVINENKO objected to and rejected the (a) sexual harassment by Straub between February 2020 and June 2020; and (b) Straub's unwanted sexual advances and demands for sexual relations from LITVINENKO between February 2020 and June 2020 as an express condition by Straub, President of PALM BEACH POLO, for LITVINENKO to be hired as a full-time employee of PALM BEACH POLO—which conduct by Straub LITVINENKO reasonably and in good faith believed was illegal—LITVINENKO engaged in protected activity within the meaning of the FCRA, F.S. §760.10.

76.     PALM BEACH POLO intentionally retaliated against LITVINENKO in June 2020 and refused or failed to hire LITVINENKO as a full-time employee following LITVINENKO'S objections to and rejections of Straub's unlawful demands for sexual relations from LITVINENKO as a condition of Plaintiff being hired by PALM BEACH POLO, in violation of the FCRA, F.S. §760.10.

77.     The fact that LITVINENKO engaged in activity protected by the FCRA between February 2020 and June 200—by, *inter alia,* (a) objecting between February 2020 and June 2020 to the sexual harassment and sex/gender discrimination she was subjected to by Straub; (b) repeatedly rejecting between February 2020 and June 2020 Straub's multiple demands for sexual relations from LITVINENKO as a condition of Plaintiff being hired as an employee by PALM BEACH POLO—was a motivating factor behind PALM BEACH POLO's failure or refusal to hire LITVINENKO as an employee in June 2020, in violation of F.S. §760.10.

78.     As a direct and proximate result of PALM BEACH POLO'S unlawful retaliation against LITVINENKO, Plaintiff has suffered damages and has been deprived of job-related economic benefits, all in amounts to be established at trial, including suffering a loss of earnings, emotional distress, loss of self-esteem and other injuries as a direct result of PALM BEACH POLO'S violations of the FCRA,

79.     PALM BEACH POLO's violations of §760.10 were intentional and were done with malice and reckless disregard for LITVINENKO's rights as guaranteed under the laws of the State of Florida, such that LITVINENKO is entitled to punitive damages against PALM BEACH POLO pursuant to F.S. §760.11(5).

80.     Pursuant to F.S. §760.11(5), LITVINENKO is entitled to recover her reasonable attorneys' fees and costs from PALM BEACH POLO.

WHEREFORE, Plaintiff, OLGA LITVINENKO, demands judgment against Defendant, PALM BEACH POLO, INC., for back pay, employment benefits, other compensation including bonuses, compensatory damages, equitable relief including but not limited to front pay, injunctive relief, interest, attorney's fees, costs, expert fees and such other and further relief as this Honorable Court deems proper.

## **JURY TRIAL DEMAND**

OLGA LITVINENKO demands trial by jury on all issues so triable.


Dated:  May 10, 2021                          Respectfully submitted,


                              By:     **KEITH M. STERN**
                                      Keith M. Stern, Esquire
                                      Florida Bar No. 321000
                                      E-mail:  employlaw@keithstern.com
                                      LAW OFFICE OF KEITH M. STERN, P.A.
                                      80 S.W. 8th Street, Suite 2000

Miami, Florida 33130
Telephone:  (305) 901-1379
Fax:  (561) 288-9031

Noah E. Storch, Esquire
Florida Bar No. 85476
E-mail:  Noah@floridaovertimelawyer.com
Andres Kroboth, Esquire
Florida Bar No. 1016483
E-mail:  andres@floridaovertimelawyer.com
CELLER LEGAL, P.A.
10368 W. SR. 84, Suite 103
Davie, Florida 33324
Telephone: (866) 344-9243
Facsimile: (954) 337-2771

Attorneys for Plaintiff

# EXHIBIT A



ORIGINAL CHECK IS PRINTED ON CHEMICAL REACTIVE PAPER AND HAS MICRO PRINTING IN THE SIGNATURE LINE

**PALM BEACH POLO, INC.**
11199 POLO CLUB ROAD
WELLINGTON, FL 33414

*Golf and Country Club*

BANK OF AMERICA
63-4/630

**109279**

PAY      One Thousand Dollars and Zero Cents

TO THE
ORDER OF      **Olga Litvinenko**

Jun 18, 2020          109279          1,000.00

AUTHORIZED SIGNATURE

WARNING - THIS DOCUMENT HAS A SECURITY COLOR BACKGROUND ON FACE

⑈109279⑈ ⑆063000047⑈8980 13 2040 89⑈

NEGOTIATION OF THIS CHECK SHALL ACT AS A
FULL RELEASE OF ALL CLAIMS WHATSOEVER.

X

# EXHIBIT B

EEOC Form 5 (11/09)

| CHARGE OF DISCRIMINATION | Charge Presented To: | Agency(ies) Charge No(s): |
|---|---|---|

This form is affected by the Privacy Act of 1974. See enclosed Privacy Act Statement and other information before completing this form.

Charge Presented To:
[ ] FEPA
[X] EEOC

**Florida Commission On Human Relations** — And EEOC

*State or local Agency, if any*

| Name *(indicate Mr., Ms., Mrs.)* | Home Phone *(Incl. Area Code)* | Date of Birth |
|---|---|---|
| Olga Litvinenko | c/o Richard Celler, Esq. 866-344-9243 | |

| Street Address | City, State and ZIP Code |
|---|---|
| c/o Richard Celler Legal, P.A. Law Office of Keith M. Stern, P.A. | 10368 W. State Road 84 Suite 103 Davie, Florida 33324 80 S.W. 8th Street, Suite 2000, Miami, Florida 33130 |

Named is the Employer, Labor Organization, Employment Agency, Apprenticeship Committee, or State or Local Government Agency That I Believe Discriminated Against Me or Others. *(If more than two, list under PARTICULARS below.)*

| Name | No. Employees, Members | Phone No. *(Include Area Code)* |
|---|---|---|
| Palm Beach Polo, Inc. | 20+ | (561) 798-7405 |

| Street Address | City, State and ZIP Code |
|---|---|
| 11199 Polo Club Rd. | Wellington, FL 33414 |

DISCRIMINATION BASED ON *(Check appropriate box(es).)*

[ ] RACE  [ ] COLOR  [X] SEX  [ ] RELIGION  [ ] NATIONAL ORIGIN
[X] RETALIATION  [ ] AGE  [ ] DISABILITY  [ ] GENETIC INFORMATION
[ ] OTHER *(Specify)*

DATE(S) DISCRIMINATION TOOK PLACE
Earliest: 01/2020   Latest: 06/19/2020

[ ] CONTINUING ACTION

THE PARTICULARS ARE *(If additional paper is needed, attach extra sheet(s)):*

I met Palm Beach Polo, Inc. ("PBP")'s President, Glenn Straub, in 2019. Mr. Straub gave me his telephone number and told me to stay in touch, expressing his interest in exploring mutual business opportunities including the possibility of me working for PBP in the near future. I flew to South Florida in January 2020, staying at the Royal Blues Hotel. During my January 2020 trip, I checked on a line of perfume I was selling at the hotel and I met with Mr. Straub multiple times about business and employment opportunities with PBP. In this regard, Mr. Straub encouraged me to visit Florida again soon so that he could show me PBP's work and introduce me to some of his friends and associates.

In early February 2020, I returned to South Florida and stayed at one of PBP's employee apartments so that Mr. Straub could show me PBP's properties and talk more with me about working for PBP. Notably, Mr. Straub expressed a desire for physical intimacy with me in February 2020, with Mr. Straub explaining that sexual relations would constitute part of any arrangement for me to work for PBP. Moreover, Mr. Straub further told me in February 2020 that he did not know how I would prove my "loyalty" otherwise. From the outset, I made it clear to Mr. Straub that a sexual or romantic relationship with Mr. Straub did not interest me at all and that any working relationship would be purely professional in nature.

The outbreak of the COVID-19 pandemic served to decelerate discussions about me coming to work for PBP. On June 11, 2020, Mr. Straub and I touched base over the telephone and it was agreed that I would fly from Connecticut to South Florida in order to further discuss me working for PBP in a position that would encompass me serving as a Communications Director or Director of Special Projects based upon a salary of between approximately $200,000 to $300,000 per year. I booked a flight for the morning of June 15, 2020. I also spoke with Mr. Straub again on June 14, 2020. During this conversation, Mr. Straub told me that he understood and respected the discomfort I had expressed a few months earlier when Mr. Straub previously conditioned me working with PBP based upon me agreeing to be sexually intimate with Mr. Straub. In this regard, Mr. Straub stated on June 14, 2020 that if I were to really work for PBP, he and I would spend a great

deal of time together, like "a companionship," while Mr. Straub promised that I would be paid for my time and expenses for my business trip to South Florida.

Unfortunately, upon my arrival in South Florida on June 15, 2020, it became clear that Mr. Straub still had sexual intentions toward me in mind as a condition of me becoming employed by PBP.  Mr. Straub installed me in an apartment at PBP's country club in Wellington, Florida.  After an early dinner at a nearby restaurant, during which Mr. Straub discussed several work projects, Mr. Straub brought me back to the PBP apartment, purportedly to make sure I was settled OK and so that Mr. Straub could quickly use the bathroom before leaving.  However, Mr. Straub emerged from the bathroom with his jeans unbuttoned and his belt loose, clanking noisily.  Mr. Straub then proceeded to enter the apartment's bedroom, where he remained until he called me into the bedroom.  Once I entered the bedroom, I observed Mr. Straub unfolding the blanket on the bed and tossing it to the side, while Mr. Straub sat on the bed and told me to get on the bed next to him.  Ms. Litvinenko responded that I was not comfortable but that we could talk in the kitchen or living area of the apartment.

Next, Mr. Straub said: "What do you mean?  Don't you understand?"  Mr. Straub then told me that sexual intimacy with him would be "part of the deal" in order for me to work for PBP.  This constituted an unambiguous confirmation that PBP's offer of employment to me was subject to an unlawful sexual *quid pro quo* condition that I agree to engage in sexual relations with Mr. Straub.  Distraught and terrified, alone in the bedroom with Mr. Straub's sexually-inflamed state, I stammered but made clear to Mr. Straub that I <u>would not</u> have sex with him and that I had only flown to Florida to discuss working for him and PBP.  Moreover, I explicitly told Mr. Straub that I had more to offer PBP than just having sex with Mr. Straub.  This was all particularly frustrating and bewildering for me, as I thought that we had already addressed this topic when I previously rejected Mr. Straub's unwanted sexual advances.  I reminded Mr. Straub that I had a reputation as a businesswoman to honor and uphold, one that people trust, and that doing as Mr. Straub repeatedly insisted would ruin my professional reputation.  In response, Mr. Straub said: "Wow," and he further told me that he "didn't have time to waste."  Mr. Straub elaborated: "This is what I do.  I like beautiful women.  I'm not like Jeffrey Epstein, who has thirteen (13) year-olds.  This is what I enjoy."  I believe Mr. Straub's demand for sexual relations from me in return for a high paying job with PBP demonstrates explicitly that PBP unlawfully discriminated against me because of my sex/gender through improper *quid pro quo* harassment.  As discussed more fully below, the United States Supreme Court has determined that if an employer demands sexual relations or sexual favors from an employee or job applicant in return for employment or a job benefit, discrimination with respect to terms or conditions of employment is explicit.  *Burlington Indus. v. Ellerth*, 524 U.S. 742, 752 (1998).

I asked Mr. Straub what I should do, as I had booked a roundtrip ticket under the belief that I was in town for business reasons, and I further stated that I would appreciate it if Mr. Straub took care of reimbursing my travel expenses and paying me for my time consistent with Mr. Straub's commitment before I traveled from Connecticut.  In response, Mr. Straub told me that he didn't wish to pay me for my time, despite Mr. Straub's promise to do so, and that he would "think about" reimbursing me for my expenses.  The next day, Mr. Straub boasted to me that he would be interviewing other candidates to work with him and PBP in the role which I'd spent several months discussing with Mr. Straub, including one woman who had been on CNN and purportedly had "good experience."  Mr. Straub followed this up by expressly asking me whether I had "changed [her] mind" on anything we had discussed the night before.  This was a direct reference to Mr. Straub's demand for sexual relations from me in exchange for employment with PBP.  I again rejected Mr. Straub's unlawful attempts to pressure me into engaging in sexual relations with Mr. Straub in order to finalize securing a job with PBP.

After I returned home to Connecticut, Mr. Straub attempted to secure a waiver and release of all of my rights through a check PBP issued on June 18, 2020 in the amount of $1,000.00—under the guise of providing partial reimbursement for my travel expenses—but PBP placed on the back of the check the following: "negotiation of this check shall act as a full release of all claims and liabilities."  Needless to say, this is not the act of a blameless man.  I did not cash or deposit PBP's June 18, 2020 check, but I did follow up with Mr. Straub about both the money owed to me from my February 2020 business trip to South Florida and whether PBP had legitimate interest in hiring me based upon the bona fides of my experience and qualifications.

The reprehensible conduct outlined herein is extreme and actionable, as PBP's **President** repeatedly committed grossly unlawful, harassing, and discriminatory conduct against me, despite my repeated objections and rejections of Mr. Straub's unwanted sexual advances. Title VII and the FCRA prohibit discrimination based on sex/gender against a job applicant, current employee, or former employee with respect to hiring, firing, compensation, and terms and conditions and privileges of employment. It is PBP's responsibility to ensure the safety and well-being of job applicants as well as employees. This repugnant behavior is disgusting and outstandingly egregious and of the type that a jury and the public will not tolerate.

As PBP knows, it is unlawful to harass an employee or job applicant because of the employee or applicant's sex/gender, and harassment can include unwanted sexual advances, abuse, or discrimination. *See, e.g., http://www.eeoc.gov/laws/types/sexual_harassment.cfm; Meritor Sav. Bank, FSB v. Vinson*, 477 U.S. 57, 65-67 (1986). The harasser can be a supervisor, a co-worker, or even a client or customer. *See id*. Moreover, an employer also may not require sexual consideration from an employee or job applicant as a *quid pro quo* for job benefits. *See Henson v. City of Dundee*, 682 F.2d 897, 908-09 (11th Cir. 1982). An employer such as PBP is strictly liable for this type of harassment by a supervisor that results in a tangible employment action, including the hiring of, or failure to hire, a job applicant. *See Faragher v. City of Boca Raton*, 524 U.S. 775 (1998); *Burlington Indus. v. Ellerth*, 524 U.S. 742 (1998).

If an employer demands sexual favors from an employee or job applicant in return for a job or job benefit, discrimination with respect to terms or conditions of employment is explicit. *Ellerth*, 524 U.S. at 752. *See also, Steele v. Offshore Shipbuilding, Inc.*, 862 F.2d 1311, 1315 (11h Cir. 1989) ("*Quid pro quo* sexual harassment occurs when an employer alters an employee's job conditions as a result of the employee's refusal to submit to sexual demands."). When a plaintiff proves that a tangible employment action resulted from a refusal to submit to a supervisor's sexual demands, he or she establishes that the employment decision itself constitutes a change in the terms and conditions of employment and is actionable under Title VII. *Ellerth*, 524 U.S. at 753-54. Here, distressingly, the chief harasser and the issuer of the sexual *quid pro quo* condition was PBP's President and one of Ms. Litvinenko's prospective supervisors. A company such as PBP is subject to direct liability for the acts of an individual who may be treated as the company's proxy, such as a company's owner, president, partner, or other high-ranking officer. *See Indest v. Freeman Decorating, Inc.*, 164 F.3d 258, 265 (5th Cir. 1999). Mr. Straub's actions unquestionably violated Title VII and the FCRA, and PBP is strictly liable for these violations.

PBP's actions failed to comport with the protective provisions of the federal and state legislation discussed herein. The manner in which I was treated, and the timing of same, make what really happened here clear and illegal.

I believe that I was discriminated and retaliated against because of my sex/gender and my refusal to engage in sexual relations with Mr. Straub as a condition of being hired by PBP in violation of Title VII of the Civil Rights Act of 1964 and the Florida Civil Rights Act.

| | |
|---|---|
| I want this charge filed with both the EEOC and the State or local Agency, if any. I will advise the agencies if I change my address or phone number and I will cooperate fully with them in the processing of my charge in accordance with their procedures. | NOTARY – *When necessary for State and Local Agency Requirements* |
| I declare under penalty of perjury that the above is true and correct. | I swear or affirm that I have read the above charge and that it is true to the best of my knowledge, information and belief. SIGNATURE OF COMPLAINANT |
| Sep 15, 2020 *Olga Litvinenko (Sep 15, 2020 10:29 EDT)*<br><br>Date            Charging Party Signature | SUBSCRIBED AND SWORN TO BEFORE ME THIS DATE (*month, day, year*) |

# EXHIBIT C

EEOC Form 161 (11/2020)

## U.S. EQUAL EMPLOYMENT OPPORTUNITY COMMISSION

### DISMISSAL AND NOTICE OF RIGHTS

To: **Olga Litvinenko**
**C/O Richard Celler Legal Pa**
**10368 West State Road 84, Suite 103**
**Davie, FL 33324**

From: **San Juan Local Office**
**525 F D Roosevelt Ave**
**1202 Plaza Las Americas**
**San Juan, PR 00918**

| | On behalf of person(s) aggrieved whose identity is CONFIDENTIAL (29 CFR §1601.7(a)) |
|---|---|

| EEOC Charge No. | EEOC Representative | Telephone No. |
|---|---|---|
| **510-2020-05940** | **Carlos Gonzalez,** **Investigator** | **(787) 520-5616** |

## THE EEOC IS CLOSING ITS FILE ON THIS CHARGE FOR THE FOLLOWING REASON:

☐  The facts alleged in the charge fail to state a claim under any of the statutes enforced by the EEOC.

☐  Your allegations did not involve a disability as defined by the Americans With Disabilities Act.

☐  The Respondent employs less than the required number of employees or is not otherwise covered by the statutes.

☐  Your charge was not timely filed with EEOC; in other words, you waited too long after the date(s) of the alleged discrimination to file your charge

☐  The EEOC issues the following determination: The EEOC will not proceed further with its investigation, and makes no determination about whether further investigation would establish violations of the statute. This does not mean the claims have no merit. This determination does not certify that the respondent is in compliance with the statutes. The EEOC makes no finding as to the merits of any other issues that might be construed as having been raised by this charge.

☐  The EEOC has adopted the findings of the state or local fair employment practices agency that investigated this charge.

☒  Other (briefly state)     **No employer-employee relationship**

### - NOTICE OF SUIT RIGHTS -
*(See the additional information attached to this form.)*

**Title VII, the Americans with Disabilities Act, the Genetic Information Nondiscrimination Act, or the Age Discrimination in Employment Act:** This will be the only notice of dismissal and of your right to sue that we will send you. You may file a lawsuit against the respondent(s) under federal law based on this charge in federal or state court.  Your lawsuit **must be filed WITHIN 90 DAYS of your receipt of this notice**; or your right to sue based on this charge will be lost.  (The time limit for filing suit based on a claim under state law may be different.)

**Equal Pay Act (EPA):** EPA suits must be filed in federal or state court within 2 years (3 years for willful violations) of the alleged EPA underpayment.  This means that **backpay due for any violations that occurred more than 2 years (3 years) before you file suit may not be collectible.**

On behalf of the Commission

_____
**William R. Sanchez,**
**Local Office Director**

10 FEB 21
*(Date Issued)*

Enclosures(s)

cc:  **Larry A. Zink**
**Zink, Zink & Zink Co., LPA**
**C/O PALM BEACH POLO, INC.**
**3711 Whipple Avenue Nw**
**Canton, OH 44718**

**German Beard, Esq.**
**CELLER LEGAL P.A.**
**C/O Richard Celler Legal Pa**
**10368 West State Road 84, Suite 103**
**Davie, FL 33324**

Enclosure with EEOC
Form 161 (11/2020)

# Information Related to Filing Suit
## Under the Laws Enforced by the EEOC

*(This information relates to filing suit in Federal or State court <u>under Federal law</u>.
If you also plan to sue claiming violations of State law, please be aware that time limits and other
provisions of State law may be shorter or more limited than those described below.)*

**Private Suit Rights   --   Title VII of the Civil Rights Act, the Americans with Disabilities Act (ADA), the Genetic Information Nondiscrimination Act (GINA), or the Age Discrimination in Employment Act (ADEA):**

In order to pursue this matter further, you must file a lawsuit against the respondent(s) named in the charge **within 90 days** of the date you *receive* this Notice.  Therefore, you should **keep a record of this date**.  Once this 90-day period is over, your right to sue based on the charge referred to in this Notice will be lost.  If you intend to consult an attorney, you should do so promptly.  Give your attorney a copy of this Notice, and its envelope and record of receipt, and tell him or her the date you received it.  Furthermore, in order to avoid any question that you did not act in a timely manner, it is prudent that your suit be filed **within 90 days of the date this Notice was** *issued* **to you** (as indicated where the Notice is signed) or the date of the postmark or record of receipt, if later.

Your lawsuit may be filed in U.S. District Court or a State court of competent jurisdiction.  (Usually, the appropriate State court is the general civil trial court.)  Whether you file in Federal or State court is a matter for you to decide after talking to your attorney.  Filing this Notice is not enough.  You must file a "complaint" that contains a short statement of the facts of your case which shows that you are entitled to relief.  Your suit may include any matter alleged in the charge or, to the extent permitted by court decisions, matters like or related to the matters alleged in the charge.  Generally, suits are brought in the State where the alleged unlawful practice occurred, but in some cases can be brought where relevant employment records are kept, where the employment would have been, or where the respondent has its main office.  If you have simple questions, you usually can get answers from the office of the clerk of the court where you are bringing suit, but do not expect that office to write your complaint or make legal strategy decisions for you.

**Private Suit Rights   --   Equal Pay Act (EPA):**

EPA suits must be filed in court within 2 years (3 years for willful violations) of the alleged EPA underpayment: back pay due for violations that occurred **more than 2 years (3 years) before you file suit** may not be collectible.  For example, if you were underpaid under the EPA for work performed from 7/1/08 to 12/1/08, you should file suit <u>before 7/1/10</u> – *not* 12/1/10 -- in order to recover unpaid wages due for July 2008.  This time limit for filing an EPA suit is separate from the 90-day filing period under Title VII, the ADA, GINA or the ADEA referred to above.  Therefore, if you also plan to sue under Title VII, the ADA, GINA or the ADEA, in addition to suing on the EPA claim, suit must be filed within 90 days of this Notice <u>and</u> within the 2- or 3-year EPA back pay recovery period.

**Attorney Representation   --   Title VII, the ADA or GINA:**

If you cannot afford or have been unable to obtain a lawyer to represent you, the U.S. District Court having jurisdiction in your case may, in limited circumstances, assist you in obtaining a lawyer.  Requests for such assistance must be made to the U.S. District Court in the form and manner it requires (you should be prepared to explain in detail your efforts to retain an attorney).  Requests should be made well before the end of the 90-day period mentioned above, because such requests do <u>not</u> relieve you of the requirement to bring suit within 90 days.

**Attorney Referral and EEOC Assistance   --   All Statutes:**

You may contact the EEOC representative shown on your Notice if you need help in finding a lawyer or if you have any questions about your legal rights, including advice on which U.S. District Court can hear your case.  If you need to inspect or obtain a copy of information in EEOC's file on the charge, please request it promptly in writing and provide your charge number (as shown on your Notice).  While EEOC destroys charge files after a certain time, all charge files are kept for at least 6 months after our last action on the case.  Therefore, if you file suit and want to review the charge file, **please make your review request** <u>within 6 months</u> **of this Notice**.  (Before filing suit, any request should be made within the next 90 days.)

*If You File Suit, Please Send a Copy of Your Court Complaint to This Office.*